UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

CAROLYN ROSE,

        PLAINTIFF,

v.

MARTEK BIOSCIENCES CORPORATION,

        DEFENDANT.

CIVIL ACTION NO. 06-CV-29-JMH

***FILED ELECTRONICALLY***

## DEFENDANT MARTEK BIOSCIENCES CORPORATION'S MEMORANDUM IN SUPPORT OF ITS REPLY TO PLAINTIFF'S OPPOSITION TO MARTEK'S MOTION FOR SUMMARY JUDGMENT AND MARTEK'S OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiff, Carolyn Rose ("Ms. Rose"), has filed through counsel an opposition to Martek Biosciences Corporation's ("Martek") motion for summary judgment and her own cross-motion for summary judgment on her claim under the Family Medical Leave Act ("FMLA"). Plaintiff's Combined Brief at 1. Neither position has any factual or legal merit. For the reasons stated in Martek's Memorandum in Support of its Motion for Summary Judgment ("Memorandum") and as stated below, Martek's motion should be granted in toto and Plaintiff's cross-motion should be denied.

    **A.**    **Plaintiff Does Not Dispute the Dispositive Case Law Cited by Martek In Its Motion for Summary Judgment.**

In her Combined Brief, Ms. Rose makes no attempt to address the dispositive FMLA cases relied upon by Martek in its motion for summary judgment. In particular, Ms. Rose does not, and indeed cannot, refute the established case law where courts routinely have held that

- 3 -

employees who accumulate sufficient *unprotected* absences to warrant discharge under an employer's attendance policy can lawfully be discharged for violation of those attendance policies even if the employee has requested or taken FMLA leave.

For example, in *Earl v. Mervyn's*, 207 F.3d 1361 (11th Cir. 2001), the employee was chronically late to work due to what turned out to be obsessive compulsive disorder. The employer made its decision to discharge the employee on the same day that she requested FMLA leave. The court of appeals correctly upheld summary judgment for the employer since "the record demonstrates [the employee] was fired, pursuant to the specific terms of [the employer's] detailed policy, for repeated and numerous punctuality infractions." *See Earl*, 207 F.3d at 1368.

Similarly, Ms. Rose had accumulated a dismal record of attendance and punctuality infractions under Martek's Site Attendance Guidelines, which excused an absence or tardiness if the employee called in advance when she would be late or absent. (See Martek's Memorandum at 6). Martek's policy allowed employees to accumulate no more than six unexcused absences per rolling twelve month period. Rose depo. at Exhibit 3. The record evidence establishes that, at the time of her termination, Ms. Rose had accumulated 13.5 occurrences in only a six-month period, or more than double the number of occurrences that was allowed over a twelve-month period. Rose depo. at Exhibit 7. These were more than a sufficient number of occurrences to warrant the termination of Ms. Rose's employment under the attendance policy. (*See also, Morgan v. Hilti*, 108 F.3d 1319 (10th Cir. 1997) (termination for excessive absenteeism upheld where employee exhibited a pattern of frequent, unscheduled absences both before and after FMLA leave).

.

**B.     The Case Cited by Plaintiff in Support of Her Combined Brief Is Inapposite.**

Plaintiff's reliance on the Sixth Circuit decision in *Arban v. West Publishing Corp.*, 345 F.3d 390 (6th Cir. 2003) is misplaced.  While the *Arban* court discusses the two theories under which a plaintiff can recover under the FMLA, the "entitlement" theory and the "retaliation" theory,  Ms. Rose's allegations do not support a claim under either theory.

The *Arban* court correctly held that an employee who requests leave under the FMLA has no immunity from discipline or discharge based on her unprotected absences.   Unlike Ms. Rose, however, Arban's attendance and work performance were satisfactory at the time he made his FMLA leave request, leading the court to conclude that the employer's stated reason for Arban's discharge was "disingenuous and the real reason was the taking of FMLA leave." *Arban*, 345 F.3d at 403.

In contrast, it is undisputed that Ms. Rose had received two disciplinary corrective action notices  for her unexcused absences, none of which were FMLA certified at the time by her treating physician, prior to requesting FMLA leave.  In addition, Ms. Rose was on notice that any further violations of the attendance policy could result in the termination of her employment.

Ms. Rose's poor record of infractions under Martek's attendance policy, which did not necessarily prohibit absences but, rather, merely required advance notice of absences, would have resulted in her discharge regardless of her request for FMLA leave.  *Arban*, 345 F.3d at 401.  The record is undisputed that Ms. Rose's treating physician, Dr. Bradburn, provided her with only one excuse, four months after it occurred, for an absence for which she earned an occurrence under Martek's no fault attendance policy – May 20, 2005.  *See* Exhibit M to Martek's Memorandum for a copy of FMLA paperwork completed by Dr. Bradburn.  None of other three dates for which Dr. Bradburn provides a medical excuse for Ms. Rose were used in

Martek's decision to terminate her employment.  Even without these dates, Ms. Rose has accumulated a record of infractions under the attendance policy that exceeded the requirements for termination of employment under the policy.  *See* Martek's Motion for Summary Judgment at 10-11. In view of the limited number of excused days provided by Dr. Bradburn, his report, even if Martek had received it prior to terminating Ms. Rose's employment, would not have changed the result.

In addition, Plaintiff purports to set forth substantive "points" from the U.S. Supreme Court's decision in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). *See* Combined Brief at 2.  Many of the "conclusions" Ms. Rose derives from *Sanderson*  cannot actually be found in the case.  Perhaps that is the reason that Plaintiff fails to provide any specific page references from *Sanderson* for the "conclusions" cited in her Combined Brief

Finally, Ms. Rose's attempt to emasculate the long-standing *McDonnell-Douglas* burden-shifting framework in FMLA retaliation cases is not well-taken.  *See Skrjanic v. Great Lakes Power Service Co.*, 272 F.3d 309 (6th Cir. 2001); *see also Gibson v. City of Louisville*, 336. F.3d 511 (6th Cir. 2003).  Under *McDonnell-Douglas*, a plaintiff relying upon indirect evidence of unlawful discrimination must first establish a *prima facie* case.  The employer then has the burden of articulating a legitimate, non-discriminatory reason for the adverse employment action.  Finally, the plaintiff must show that this non-discriminatory reason was in fact pretextual and that unlawful discrimination was the real reason for the adverse action.  *Skrjanic*, 272 F.3d at 315.  The undisputed evidence elicited in discovery in this case prevents Ms. Rose from establishing any pretext on the part of Martek.

**C.      Plaintiff Ignores Undisputed Facts in the Record and Relies on Purported Evidence That is Not in the Record.**

Plaintiff's arguments are completely undermined because she both ignores undisputed facts that are not helpful to her case and she relies on assertions that are outside of, and wholly unsupported, by the record.

The record establishes that many of Ms. Rose's unscheduled absences had nothing to do with her alleged kidney stones, a fact that Ms. Rose blithely ignores in her Combined Brief.  For instance, Ms. Rose failed to report to work on April 25, 2005 for her son's illness, she left early to take her son to the doctor on May 9, 2005 and she left early on May 11, 2005 for her own dental appointment.  None of these three dates are acknowledged or discussed in Plaintiff's Combined Brief and do not even appear on the chart that purportedly shows Ms. Rose's absences.  See Combined Brief at 12-13.  Ms. Rose's assertion that Dr. Bradburn "had no qualms about certifying Carolyn suffered a serious health condition"  (Combined Brief at 6) is an attempt to obfuscate the fact that Dr. Bradburn did not provide any medical excuse for the operative unscheduled absences that led to her discipline and eventual discharge.

The disingenuousness of Ms. Rose's arguments is exemplified by her contentions concerning her absences on April 25, 26 and 27.  Ms. Rose's testified at her deposition that she was absent on April 25, 2005 because her son was sick.  Rose depo. at 40; *see* Exhibit 4 to Rose depo. (May 18, 2005 Employee Corrective Action Notice).  Under its attendance policy, Martek correctly charged Ms. Rose for an occurrence for her April 25 absence because she failed to provide advance notice of her absence.  Ms. Rose also was absent without advance notice on April 26 and 27, for which she testified during her deposition were due to her "kidney stone problem."  Rose depo. at 41-42.  Unfortunately for Ms. Rose, Dr. Bradburn did not provide any medical excuse for April 26 and 27, much less any confirmation that Ms. Rose was suffering

from kidney stones on those dates.  In any event, those dates did not figure as separate infractions under Martek's attendance policy, which essentially gave employees a break by counting contiguous days' absences as only a single occurrence. Thus, Ms. Rose was charged for one occurrence for her absences on April 25th, April 26th and April 27th for the sole reason provided by Ms. Rose at the time – her son's illness (See Corrective Action Notice, Exhibit 4 to Rose depo.), which was not protected by the FMLA.

Similarly, Plaintiff asserts that she met with her direct supervisor, Mike Davis, on May 5, 2005 and discussed that her "[kidney] stones and medicine were the cause of [her] absences". *See* Combined Brief at 12.  Ms. Rose fails to mention, however, that on this same date she told Mr. Davis that she was late for work because her "alarm clock didn't go off" – which certainly does not rise to the level of an FMLA protected absence.  Rose depo. at 44.

Finally, Ms. Rose relies on testimony that is not a part of the record in an attempt to provide an explanation for her absences on September 19 and 20, 2005.  Thus, Ms. Rose's assertion in her Combined Brief that she called Martek on September 19 (*See* Combined Brief at 9) is inapposite because she admitted that she did not call in advance as required by the policy. Rose depo. at 42.  Ms. Rose's further assertion that her sister called on September 20, 2005 to let Martek know that Ms. Rose was in the hospital does not appear anywhere in the record. Strangely, Ms. Rose fails to identify her sister by name in the Combined Brief  and she never mentioned this person or this alleged telephone call during her deposition.  In fact, Ms. Rose's deposition testimony was that **she** called in sick on September 20, 2005.  Rose depo. at 68-69. In addition, Ms. Rose never identified her sister or any other individual as having knowledge of this fact in her Rule 26 Disclosures and Answers to Interrogatories.  The identification of a witness after the close of discovery when Martek is unable to cross-examine her is an obvious

desperate attempt by Ms. Rose to fend off Martek's well-supported Motion for Summary Judgment and should not be allowed by the Court.

Finally, Ms. Rose's assertion that she "went to lengths to seek FMLA protection" (Combined Brief at 10) is unsupported in the record and is an overstatement at best.  The undisputed record evidence establishes that Ms. Rose first requested FMLA paperwork on August 26th, which was after all but two of her unexcused absences. The record further establishes that Martek responded immediately by forwarding FMLA papers to her on August 29th.  See Exhibit 13 to Wilson depo.  The documentary evidence in the record establishes that Ms. Rose waited until September 7 to forward those papers to Dr. Bradburn.  See Exhibit 8 to Rose depo.  Further, it is uncontradicted in the record that Ms. Rose told LaVonne Wilson, when Ms. Wilson was inquiring about the whereabouts of her FMLA papers, that her delay in submitting the FMLA paperwork was due to her difficulty in getting a doctor to certify that her absences were sue to an FMLA-protected reason.  Wilson depo. at 74.  Ms. Rose cited no contradictory testimony, leaving this fact undisputed in the record.   Finally, the undisputed record evidence establishes that Ms. Rose had ample opportunities prior to August 2005 to request the paperwork from numerous Martek officials and yet failed to do so.

### D. Plaintiff's Affidavit Attached to Her Combined Brief Cannot Be Used Since It Clearly Contradicts Her Earlier Deposition Testimony.

Ms. Rose attempts to defeat Martek's motion to limit her entitlement to back pay through the introduction of an affidavit from her that contradicts her earlier deposition testimony. The affidavit purports to list the positions for which she applied since her termination from Martek in September 2005.  During her deposition, which occurred on April 26, 2006, Ms. Rose testified that she had applied only for four positions since her termination.  Rose depo. at 78-81.  The affidavit now offered lists 27 different positions for she applied, most of which occurred prior to

the date of her deposition, and clearly contradicts her earlier deposition testimony.  It is well established in the Sixth Circuit that a "party may not create a factual issue by filing an affidavit after a motion for summary judgment has been made, which contradicts [its] earlier deposition testimony."  *Reid v. Sears, Roebuck & Co.*, 790. F.2d 453, 460 (6th Cir. 1986

In addition, the affidavit contradicts Ms. Rose's Answers to Interrogatories, which were not updated prior to the conclusion of discovery.  *See Babrocky v. Jewel Food Co.*, 773 F.2d 857 (7th Cir. 1985)(summary judgment is appropriate where plaintiff contradicted her own admission from just six months earlier without any explanation for the contradiction).  Ms. Rose also does not provide any evidence that contradicts the affidavit of Diana Brown that she would have lost her job in any event in October 2006.  (See Martek's Memorandum at 20).

Finally, Plaintiff's reliance on *Rasimas v. Michigan Dep't of Mental Health*, 714 F.2d 614, 623 (6th Cir. 1983) for the proposition that the reasonableness of an employee's efforts should be evaluated in light of the individual characteristics of the claimant and job market is misplaced.  *See* Combined Brief at 14.  In *Rasimas*, there was no question that the plaintiff had sought subsequent employment.  Instead, the court had to analyze whether the plaintiff's decision to turn down two other job offers was reasonable.  The court held that it was given that one of the positions was 223 miles from plaintiff's home and the other was clearly not a supervisory position like the one plaintiff had previously held.  *Rasimas*, 714 F.2d at 625.  In the instant case, there is no need to engage in such an analysis since Ms. Rose failed to conduct any adequate search for alternate employment.

In view of the lack of any contradictory evidence on this issue, Martek's motion should be granted.

## CONCLUSION

- 10 -

In these circumstances, Defendant Martek Biosciences Corporation respectfully requests that this Court enter an order granting summary judgment in its favor and order denying Ms. Rose's motion for summary judgment.

Respectfully submitted,

/s/ Mauritia G. Kamer
Mauritia G. Kamer
STITES & HARBISON PLLC
250 West Main Street, Suite 2300
Lexington, KY  40507-1758
Telephone:  (859) 226-2300
mkamer@stites.com

Gil A. Abramson
HOGAN & HARTSON LLP
111 South Calvert Street
Suite 1600
Baltimore, MD  21202
Telephone:  (410) 659-2723
gaabramson@hhlaw.com

COUNSEL FOR DEFENDANT
MARTEK BIOSCIENCES CORPORATION