UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

CAROLYN ROSE,                          )
                                       )
     Plaintiff,                    )    Civil Action No. 5:06-29-JMH
                                       )
V.                                     )
                                       )
MARTEK BIOSCIENCE CORPORATION,         )
                                       )    **MEMORANDUM OPINION AND ORDER**
     Defendant.                    )
                                       )

**       **       **       **       **

Before the Court are Defendant Martek Bioscience Corporation's motion for summary judgment [Record No. 31] and Plaintiff Carolyn Rose's cross-motion for summary judgment [Record No. 36].[1]  Both parties have submitted their briefs, and this matter is ripe for review.

## I.   FACTUAL BACKGROUND

Martek is a biosciences corporation headquartered in Columbia,

---

[1] Plaintiff's cross-motion for summary judgment was filed as part of her response to Defendant's motion for summary judgment on February 26, 2007.  The dispositive motion deadline was January 26, 2007.  The Court will construe the late motion as a request to modify the scheduling order.  *See Andretti v. Borla Performance Industries*, 426 F.3d 824, 830 (6th Cir. 2005).  Under Federal Rule of Civil Procedure 16(b), a scheduling order "shall not be modified except on a showing of good cause and by leave of the district judge."  However, "[t]he Sixth Circuit has added its own gloss to the good-cause standard, instructing lower courts to consider not only the diligence of the moving party but also possible prejudice to the party opposing the modification." *Chao v. Local 951 United Food and Commercial Workers*, 2006 WL 2771771 at *1 (W.D. Mich. 2006) (citing *Andretti*, 426 F.3d at 830; *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002)).  Since the defendant did not object to Plaintiff's late-filed motion for summary judgment in its responsive brief [Record No. 50], the Court presumes there is no possible prejudice and will accept the late-filed motion.

Maryland and has manufacturing facilities in Kingstree, South
Carolina and Winchester, Kentucky. The Winchester facility had an
on-site Director of Human Resources, LaVonne Wilson, but the
company's benefits plans, including its Family and Medical Leave
Act ("FMLA") policy, were administered out of Martek's corporate
headquarters.

Plaintiff began working for Martek as a temporary employee at
the Winchester facility on January 9, 2003. She helped input order
data into a new computer system in Martek's materials department
under the supervision of Mike Davis, Materials Control Manager.
After several months, Plaintiff successfully applied for a posted
regular full-time position and started as a full-time employee,
again under the supervision of Davis, on May 1, 2003.

In early 2005, Martek implemented new attendance guidelines,
in part to control absenteeism in order to ensure an uninterrupted
flow of production. Under the guidelines, unscheduled absences
(i.e. absences not approved in advanced) were considered an
"occurrence", and tardiness or unapproved early departures were
considered half an occurrence. Though the attendance policy did
not specifically address unforeseen illness or unexpected hospital
visits, it accounted for these events by allowing a number of
unexcused absences prior to any disciplinary action. An
accumulation of three occurrences in a six month period or an
accumulation of five or more occurrences in a twelve month period

2

would subject an employee to discipline, including counseling, warnings, and, ultimately, discharge.

Between April and September, 2005, Plaintiff incurred 13.5 occurrences under the attendance policy. She received one-on-one counseling on May 5, 2005, a verbal warning on May 18, 2005, and a written warning on June 16, 2005. After the written warning, Plaintiff did not incur any more occurrences until August 17, but she then incurred five more occurrences between August 17 and September 20, 2005.

Plaintiff claims that she was suffering from kidney stones as early as May 2005. On May 24, 2005, Mike Davis sent an email to LaVonne Wilson stating, "OK I think, [sic] she has kidney stones now." On August 26, 2005, Plaintiff requested FMLA paperwork. Dianna Brown, Administration and Human Resources Supervisor for Martek, sent the paperwork to Plaintiff on August 29, 2005. Plaintiff claims she received the FMLA papers on September 7, 2005 and faxed them to her physician, Dr. Eric Bradburn, that same day.

After her September 20 absence, Plaintiff's record of absenteeism and tardiness was as follows:

| DATE | DESCRIPTION | OCCURRENCE SCORE | TOTAL |
|------|-------------|------------------|-------|
| April 11, 2005 | Called in sick | 1 | 1.0 |
| April 22, 2005 | Scheduled day off | 0 | 1.0 |
| April 25, 2005 | Called in, sick son, left message | 1 | 2.0 |

3

| April 26 and 27, 2005 | Counted as part of April 25 absence | 0 | 2.0 |
|---|---|---|---|
| May 4, 2005 | Called in sick w/o advance notice | 1 | 3.0 |
| May 5, 2005 | Two hours late due to alarm | 0.5 | 3.5 |
| May 5, 2005 | Counseling re: attendance | n/a | 3.5 |
| May 9, 2005 | Left early due to son's Dr. appointment, no advance notice | 0.5 | 4.0 |
| May 11, 2005 | Left early for dentist appointment, no advance notice | 0.5 | 4.5 |
| May 17, 2005 | Left early for Dr. appointment, no advance notice | 0.5 | 5.0 |
| May 18, 2005 | Verbal Warning | n/a | 5.0 |
| May 20, 2005 | Left work early to go to hospital | 0.5 | 5.5 |
| May 24, 2005 | Absent without advance notice | 1 | 6.5 |
| May 25, 2005 | Discussed May 20 and 24 absences | n/a | 6.5 |
| June 1, 2005 | Left early for Dr. appointment, advance notice given | 0 | 6.5 |
| June 2, 2005 | Called in sick, no advance notice | 1 | 7.5 |
| June 3, 2005 | Dr. appointment, advance notice given | 0 | 7.5 |
| June 13, 2005 | Called in sick without advance request | 1 | 8.5 |
| June 16, 2005 | Written Warning | n/a | 8.5 |
| Aug. 17, 2005 | Left early for hospital | 0.5 | 9.0 |
| Aug. 18, 2005 | Called in sick, no advance notice | 1 | 10.0 |

| Aug. 19, 2005 | Called in sick, no advance notice | 1 | 11.0 |
|---|---|---|---|
| Aug. 22, 2005 | Clocked in one minute late | 0.5 | 11.5 |
| Aug. 23, 2005 | Pre-approved Paid Time Off (PTO) for Dr. Appointment | 0 | 11.5 |
| Sept. 5, 2005 | Holiday PTO | 0 | 11.5 |
| Sept. 19, 2005 | Called in sick at 7:15 a.m. | 1 | 12.5 |
| Sept. 20, 2005 | Called in sick at 6:07 a.m. | 1 | 13.5 |

Plaintiff claims that her absences on April 11, April 26, April 27, May 17, May 24, August 17, August 18, September 19, and September 20 were related to her kidney stones. Plaintiff's sister notified Martek on September 20 that Plaintiff was in the hospital. Plaintiff also claims that Davis knew she was sick on May 24 and that she called in about the kidney stones on August 18. She does not remember what she told Martek on April 11, April 26, April 27, May 17, or August 18. On May 20, Plaintiff left work for the hospital due to nausea and vomiting. Plaintiff also says she was sick with an ulcer on June 2 and June 13.

On September 20, LaVonne Wilson sent an email to several Martek officers recommending that Plaintiff's employment be terminated due to her history of attendance problems. Plaintiff was terminated on September 22, 2006.

Martek received the FMLA papers from Dr. Bradburn the next day, September 23, 2006. Dr. Bradburn certified that he saw Plaintiff on May 20, May 23, July 1, August 23, and September 9 for evaluation and treatment of gastritis, kidney stones, and peptic

5

ulcer disease.  He also indicated that Plaintiff would reasonably need a day off prior to and after the visit dates.

After Plaintiff's termination, on October 26, 2006, Martek laid off more than 100 employees.  Dianna Brown claims that, to the best of her knowledge, Plaintiff's position was one of those eliminated.

Plaintiff filed this FMLA retaliation action in Clark Circuit Court on January 10, 2006.  Defendant removed the case to this Court on January 31, 2006.  In support of its summary judgment motion, Defendant argues that Plaintiff's absences are not protected because she failed to give proper notice that she was taking leave for a serious health condition.  Defendant also argues that it is entitled to summary judgment on the issue of back pay because Plaintiff failed to mitigate her damages or, in the alternative, that Plaintiff's back pay should cut off as of October 26, 2006, because Plaintiff's position was terminated.  Plaintiff's summary judgment motion argues that the undisputed facts show that the absences of September 19th and 20th were FMLA-protected and that these absences triggered her termination in violation of the FMLA.

## II.  STANDARD OF REVIEW

*A.   Summary Judgment*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

6

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden is met by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id.* at 325. The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

Pursuant to Federal Rule of Civil Procedure 56(e), the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e). "If, under the governing law, the outcome would be the same regardless of how a factual dispute is resolved, the dispute is no bar to summary judgment." *Pharakhone v. Nissan N. Am., Inc.*, 324 F.3d 405, 407 (6th Cir. 2003).

When determining whether there is enough evidence to overcome summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Multimedia 2000, Inc. v. Attard*,

7

374 F.3d 377, 380 (6th Cir. 2004).  The Court must not weigh the evidence, but must decide whether there are genuine issues for trial.  *Anderson*, 477 U.S. at 249.

B.   *Family and Medical Leave Act*

Under the FMLA, 29 U.S.C. § 2601 *et seq.*, covered employers have an obligation to provide their qualifying employees up to twelve weeks of leave within a twelve month period when the employee suffers from "a serious health condition that makes the employee unable to perform the functions of . . . [her] position." 29 U.S.C. § 2612(a)(1)(D).  A "serious health condition" is "an illness, injury, impairment, or physical or mental condition that involves . . . (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).  A "serious health condition involving continuing treatment by a health care provider includes . . . [a]ny period of incapacity or treatment for such incapacity due to a chronic serious health condition." 29 C.F.R. § 825.114(a)(2)(iii).   A "chronic serious health condition . . . (A) Requires periodic visits for treatment by a health care provider . . . ; (B) Continues over an extended period of time (including recurring episodes of a single underlying condition); and (C) May cause episodic rather than a continuing period of incapacity . . . ." *Id.*

Plaintiffs may recover for FMLA violations under two theories.

8

*Arban v. West Publishing*, 345 F.3d 390, 401-403(6th Cir. 2003). The "entitlement," or "interference," theory, which is derived from the FMLA's creation of substantive rights, holds that an FMLA violation has occurred "[i]f an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave." *Id.* at 401 (citing *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999)). "Because the issue is the right to an entitlement, the employee is due the benefit if the statutory requirements are satisfied, regardless of the intent of the employer." *Arban*, 345 F.3d at 401. The right to non-interference is not absolute. *Id.* "An employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *Id.*

Under the "retaliation" theory, employees are protected "in the event they suffer retaliation or discrimination for exercising their rights under the FMLA." *Id.* at 403. "An employer is prohibited from discriminating against employees . . . who have used FMLA leave" and cannot "use the taking of FMLA leave as a negative factor in employment actions." 29 C.F.R. § 825.220(c). "This prohibition includes retaliatory discharge for taking leave." *Arban*, 345 F.3d at 403 (citing *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001)).

9

In an FMLA case relying on indirect evidence of retaliation, the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies. *Skrjanc*, 272 F.3d at 315 (citing *McDonnell Douglas*, 411 U.S. at 802). First, the plaintiff must prove a prima facie case of discrimination. *Id.* In order to present a prima facie case of retaliatory discharge, the plaintiff must show (1) that she availed herself of a protected right under the FMLA; (2) that the defendant took an employment action adverse to the plaintiff; and (3) that there was a causal connection between plaintiff's exercise of her FMLA right and the adverse employment decision. *Skrjanc*, 272 F.3d at 314 (citing *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990)). After the plaintiff proves a prima facie case, the burden shifts to the defendant "to articulate a legitimate, nondiscriminatory reason" for the plaintiff's discharge. *Skrjanc*, 272 F.3d at 315 (citing *McDonnell Douglas*, 411 U.S. at 802-04). If the defendant articulates such a reason, the plaintiff then "has the burden of showing that the articulated reason is in reality a pretext to mask discrimination." *Skrjanc*, 272 F.3d at 315 (citing *McDonnell Douglas*, 411 U.S. at 804-06).

Both theories require at the outset that the employee's leave be protected by the FMLA. In order for the leave to be protected, the employee must give substantively sufficient notice.

> To invoke the FMLA's protection . . . , the eligible employee, during [her] employment, must request leave and

> give the employer notice that he is requesting such leave
> for a serious health condition . . . .   [T]he critical
> test for substantively-sufficient notice is whether the
> information that the employee conveyed to the employer
> was reasonably adequate to apprise the employer of the
> employee's request to take leave for a serious health
> condition that rendered him unable to perform his job.

*Brenneman v. MedCentral Health System*, 366 F.3d 412, 421 (6th Cir.

2004).   When the need for leave is foreseeable, the employee must

give the employer "'not less than 30 days' notice, before the date

the leave is to begin.'"   *Id.* (quoting 29 U.S.C. § 2612(e)(2)(B)).

However, when the time of the needed leave is unforeseeable, the

employee should give notice

> "as soon as practicable under the facts and circumstances
> of the particular case." 29 C.F.R. § 825.303(a). "It is
> expected that an employee will give notice to the
> employer within no more than one or two working days of
> learning of the need for leave, except in extraordinary
> circumstances . . . [in which] such notice is not
> feasible."

*Brenneman*, 366 F.3d at 421.   Notice should be given "either in

person or by . . . electronic means.  Notice may be given by the

employee's spokesperson (e.g., spouse, adult family member or other

responsible party) if the employee is unable to do so personally."

29 C.F.R. § 825.303(b).   Once the employer receives sufficient

notice, it "bears the burden to gather any additional information

necessary for the leave to fall within the FMLA."   *Brenneman*, 366

F.3d at 422.

## III. ANALYSIS

Plaintiff's complaint only alleges retaliation under the FMLA.

11

Therefore, the Court will not address the issue of whether Defendant's alleged conduct constitutes FMLA interference. For the purposes of its summary judgment motion, Defendant has also not contested the characterization of kidney stones as a serious health condition and has not contested whether Plaintiff actually had the condition.

There is enough evidence on the record to create a genuine issue as to whether Plaintiff's absences on May 20, May 24, August 18, September 19, and September 20, were protected by the FMLA. That being the case, Plaintiff still accumulated 9.0 unprotected occurrences under Martek's attendance policy within the five month period between April 11, 2005 and September 20, 2005. This pattern of unscheduled absences, tardies, and early departures provided a legitimate, non-discriminatory reason for terminating the plaintiff.[2] Plaintiff also received one-on-one counseling, a verbal warning, and a written warning regarding her attendance habits, so there can be no doubt that she knew the possible consequences of her continuing violations of the attendance policy.

Plaintiff did not offer any evidence suggesting that Defendant

---

[2] Defendant did not provide case law in support of its argument that Plaintiff's unprotected absences provided sufficient justification to discharge Plaintiff, notwithstanding the fact that she had taken FMLA leave, until its reply brief. *Defendant's Memorandum in Support of Reply and Opposition to Plaintiff's Cross-Motion for Summary Judgment* at 4. However, Plaintiff had an additional opportunity to address this argument in the reply brief in support of her cross-motion for summary judgment.

"was not actually concerned about her attendance." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1325 (10th Cir. 1997). Therefore, even though the proximity between the allegedly protected absences of September 19 and 20 and Plaintiff's date of termination is enough to establish a prima facie case, *see id.*, Plaintiff has not established that her excessive absenteeism was pretext for her termination, and summary judgment is proper.

Assuming *arguendo* that Plaintiff had established a case that survives summary judgment, her damages would still have been capped because her eligibility for back pay was cut off on October 26, 2006. "When backpay should terminate depends upon the particular circumstances of the case and upon the application of the broad 'make whole' principle of Title VII." *Easter v. Jeep Corp.*, 896 F.2d 553, at *2 (6th Cir. 1990) (citing *EEOC v. Monarch Machine Tool Co.*, 737 F.2d 1444, 1452 (6th Cir. 1980)). Here, the Defendant presented evidence that one-hundred positions were laid off on October 26, 2006, and that Plaintiff's position was one of those terminated. Accordingly, back pay cannot continue past this date.

For the foregoing reasons, **IT IS ORDERED:**

(1) That Defendant's motion for summary judgment [Record No. 31] be, and the same hereby is, **GRANTED.**

(2) That Plaintiff's cross-motion for summary judgment [Record No. 36] be, and the same hereby is, **DENIED.**

13

(3)   That Plaintiff Carolyn Rose's complaint against Defendant Martek Biosciences Corporation for FMLA retaliation be, and the same hereby is, **DISMISSED WITH PREJUDICE.**

This the 27th day of April, 2007.



Signed By:

_**Joseph M. Hood**_

**United States District Judge**